# EX4



**CBM**

COCKEY BRENNAN
& MALONEY P.C.

313 Lemmon Hill Lane
Salisbury, MD 21801

O) 410.546.1750
F) 410.546.1811

CBMlawfirm.com

ROBIN RINGGOLD COCKEY, ESQ.
rrcesq@cbmlawfirm.com
D) 410.546.1698

December 12, 2024

**Via Email** ███████@umes.edu

Matthew A. Taylor, Esquire
General Counsel
Office of the President
John T. Williams Hall, Suite 2102
Princess Anne, MD 21853

**Re** ████████████

Dear Matt,

I am counsel for ████████████████████████████████████████ a faculty appointment as a tenured full professor.) I write concerning the adverse actions recently taken against ███.

On December 6, ██████ was summoned to a meeting with Jason Casares, who presented him a letter informing him of a complaint he had "created a hostile work environment... characterized by intimidation and harassment." The complainant was identified as ███████.

Ms. ███████ is a temporary employee housed in a separate building with whom ███████ has met perhaps six times, never for more than a few minutes and always in the presence of a witness ███████. Manifestly ███████ has never been in a position to intimidate or harass ███████ as I am confident Ms. ███ will confirm (if she has not already done so).

Despite the implausibility of Ms ███████████, Mr. Casares handed ███████ a memo putting him on administrative leave "pending a fact-finding investigation." Mr. Casares then had ███████ escorted off-campus by two uniformed security officers. Meanwhile, I am informed Ms. Martin of the OIE has reached out to members of the campus community in an attempt to develop support for Ms ███████ specious accusation.

It is ███████ intention to sue ███████ for defamation and to sue the University and its agents -including without limitation Jason Casares- for so-called false light defamation ███████ reputation has been irreparably tarnished, for which he intends to seek redress.

I will shortly send you an evidence hold letter and will shortly send the Treasurer a tort claim notice.

Very Truly Yours,

Robin R. Cockey

RRC/mw

Cc: [redacted] *via email*

# EX5

Professor
University of Maryland Eastern Shore

**From:** ███ @umes.edu>
**Sent:** Wednesday, December 11, 2024 2:31 PM
**To:** Ginta Martin, Alexandra F <agmartin1@umes.edu>; regents@usmd.edu <regents@usmd.edu>
**Subject:** Re: Preliminary Investigation Report Review - Follow up

Hello Ms. Martin (AG's office and members of the USM Regents),

Your office has continued hunting me and harassing me with emails during this busy time of the final exam week with the pressing deadline for me as a faculty to submit my final grades.

The entire UMES community and the people outside of UMES all hear about your office has pu[...] under administrative leave without investigation, why hasn't your office followed the same proce[...] when handling my case again[...]?

[...] the only person who works with Ms ███ (the complainant). She is a temp worker and I ███ coordinate all communications between two parties. They only met in-person six times (all at the publi[...] and one virtual meeting. I arranged all those meetings and was present as an eyewitness on every occasi[...] Your office has never contacted me for investigation before putting ███ on leave.

Whereas I filed complaints two times providing documents and detailed information regarding each intera[...] had with ███ since two years ago. Despite the fact that there are multiple official and unoff[...] complaints agains[...] from several colleagues from two departments (including current and past colleagues), your office refused to conduct impartial investigation and has showed bias by calling witness[...]

# EX6

## Affidavit

State of Maryland
City of Salisbury

BEFORE ME, the undersigned Notary Public in and for the State of Maryland, duly commissioned, on this 24 day of December 2024, personally appeared ▮▮▮▮▮ known to me to be a credible person and of lawful age, who being by me first duly sworn, deposes and says this statement of facts:

1. I, the undersigned, am over 18 years of age and competent to testify to the facts and matters set forth in this Affidavit.

2. My name is ▮▮▮▮▮ I am a PhD student at the University of Maryland Eastern Shore and a resident of Salisbury.

3. In early December, I was contacted by the Office of Institutional Equity (OIE) to attend a meeting.

4. Alexandra Martin and Cecilia asked me hostile questions that were aimed at making me speak negatively about ▮▮▮▮▮.

5. I responded to their questions honestly that I had only met ▮▮▮▮▮ for a few minutes in person and that my interaction with him was absolutely professional.

6. I felt threatened during my interview with OIE staff to speak badly about ▮▮▮▮▮

7. OIE staff were not interested in learning about my experience at UMES or hearing anything positive about ▮▮▮▮▮ They were obviously biased.

8. ▮▮▮▮▮ has been kind, respectful, and polite to me and has never acted inappropriately toward me.

9. I am concerned that false statements may be attributed to me by the OIE staff for some conspiracy against ▮▮▮▮▮ OIE staff asked me to attend another meeting and I have nothing further to say other than the facts in this Affidavit.

10. I am extremely worried that OIE staff and some Pharmacy faculty will interfere with my research, scholarship and visa, and deny me opportunities at UMES if I do not participate in their schemes.

11. To the best of my knowledge and belief ▮▮▮▮▮ has only created a positive work environment and research culture at UMES.



12. I am signing this affidavit of my own free will and without being subjected to any pressure or compulsion or receiving any benefit from anyone.

I do solemnly affirm under the penalties of perjury that the contents of this affidavit are true to the best of my knowledge, information, and belief.

_____ Signature of affiant

12 . 29 . 24 _____ (Day/month/year)

Subscribed and sworn to before me, this 24 day of December 2024.

AS WITNESS my hand and notarial seal. _Emily A____

Notary Public

My Commission expires: 05/31/2028

EMILY ANDREAS
Notary Public - State of Maryland
Howard County
My Commission Expires May 31, 2028



## Affidavit

State of Maryland
City of Salisbury

BEFORE ME, the undersigned Notary Public in and for the State of Maryland, duly commissioned, on this 19th day of December 2024, personally appeared ▓▓▓▓▓, known to me to be a credible person and of lawful age, who being by me first duly sworn, deposes and says this statement of facts:

1. I, the undersigned, am over 18 years of age and competent to testify to the facts and matters set forth in this Affidavit.

2. My name is ▓▓▓▓▓ I am a PhD student at the University of Maryland Eastern Shore in good academic standing. I have always been a good student with high grades.

3. I was contacted by the Office of Institutional Equity (OIE) on December 10th to attend a meeting this week in person on 12th or 13th of December. It was my finals week and I had my final for course 601 on 12th of December, also had two take home finals of courses 805 and 822. All of this was stressful and I was not offered a choice to attend.

4. Alexandra Martin and Cecilia asked me questions that were designed to make me speak negatively about ▓▓▓▓▓

5. I responded to their questions honestly that I had only met ▓▓▓▓▓ for a few minutes in person and that my interaction with him was professional.

6. I felt threatened during my interview with OIE staff to speak badly about ▓▓▓▓▓

7. OIE staff were not interested in learning about my experience at UMES or hearing anything positive about ▓▓▓▓▓ They appeared to be manipulative, biased, and seemed to be coercing me by informing professors who would grade my academic work.

8. ▓▓▓▓▓ has been kind, respectful, and polite to me and has never acted inappropriately toward me.

9. I am concerned that false statements may be attributed to me by the OIE staff for some conspiracy against ▓▓▓▓▓

10. I am extremely worried that OIE staff will interfere with my research, scholarship and visa, and deny me opportunities at UMES if I do not participate in their schemes.

11. To the best of my knowledge and belief ▓▓▓▓▓ has only created a positive work environment and research culture at UMES.

I do solemnly affirm under the penalties of perjury that the contents of this affidavit are true to the best of my knowledge, information, and belief.

_____ Signature of affiant

12-19-2024 (Day/month/year)

Subscribed and sworn to before me, this 19th day of December 2024.

AS WITNESS my hand and notarial seal. _Emily And____

Notary Public

My Commission expires: 05/31/2028

EMILY ANDREAS
Notary Public - State of Maryland
Howard County
My Commission Expires May 31, 2028

EX8



OFFICE OF INSTITUTIONAL EQUITY AND COMPLIANCE

## Notice of Allegations[1]

The UMES Office of Institutional Equity and Compliance (OIE) has received a complaint from ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ concerning possible violations of the applicable University of Maryland Eastern Shore Prohibiting Policy Discrimination, and/or the State of Maryland Policy on Sexual Harassment in the Workplace, by ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

The following information contains details regarding allegations of violations related to a course of conduct b▇▇▇▇▇▇▇ based on the Complainant's sex, race/ethnicity, and national origin. The allegations of harassment had an adverse impact on the Complainant in the form of intimidation, as well as an adverse impact on the Complainant's working conditions, which created a hostile work environment for the Complainant.

1. Early on int▇▇▇▇▇▇▇▇▇▇▇ recruitment process▇▇▇▇▇▇ has allegedly displayed a diminished focus on her technical knowledge and professional skills and, during a call about a project on which he was working, he switched the conversation to personal information related to the Complainan▇▇▇▇▇▇▇▇ allegedly asked▇▇▇▇▇▇▇▇▇▇ questions about Persian women, how they were "under oppression," and made statements that "he liked to help women from Iran."

2. During subsequent conversations in text (via WhatsApp) and prior to the Complainant's arrival on campu▇▇▇▇▇▇▇▇ allegedly aske▇▇▇▇▇▇▇▇▇▇▇▇ personal questions (i.e., if she had any weekend plans, if she did not have time for fun), and made "really weird comments" about the Complainant and "partying." Examples included:
   "All work and no fun mak▇▇▇▇▇▇▇▇▇▇▇▇ a dull girl"
   "We don't allow laptops at parties here"
   "You are only allowed here if you party properly"
   "Looks like we need to give you tutorials [on partying]"
   "[Partying] That's part of the training"
   "Don't need laptop at parties here"
   "You are the busy party animal so I have to work around your busy schedule"
   "See, always partying, just as I thought"

3. Prior to the Complainant's arrival on campu▇▇▇▇▇▇▇▇▇ allegedly asked ▇▇▇▇▇▇ text (via WhatsApp) for "pics" on two occasions, when she told him that she was going on a trip with friends. The first time ▇▇▇▇▇▇▇ allegedly told the Complainant to "send pics," followed up with "not [pics] of reading articles," and "hope this phone will be

---

[1] The OIE reserves the right to supplement and/or amend the current Notice of Allegations, as appropriate, if new and pertinent information becomes available as it relates to the allegations.

INITIALS: _____
DATE: __/__/__

able to handle it [the pics]." When the Complainant did not send anythin▮ ▮ followed up the next day to inquire "what happened to the pics."

4. During a virtual meeting and prior to the Complainant's arrival on campu▮ ▮ allegedly invite▮ ▮ to meet up with him in person in Washington, DC.

5. During a virtual meeting and prior to the Complainant's arrival on campu▮ ▮ allegedly tol▮ ▮ n the context of sharing he went on a trip to Türkiye, that "people say that Turkish women are beautiful, but I prefer Persian women."

6. During an in-person interaction in the Complainant's office on campu▮ ▮ allegedly initiated a conversation wit▮ ▮ about "what she does when Persian men approach her, because they obviously have already." In that contex▮ ▮ lso stated that he "did not like working with Persian men, only with Persian women."

7. During an in-person interaction on campu▮ ▮ aske▮ ▮ to go to breakfast or dinner with him "to discuss work."

8. After the Complainant's arrival on campu▮ ▮ allegedly offered to hel▮ ▮ ▮ move her furniture, which she believed was a pretext for him to get in her house.

9. ▮ allegedly took a similar approach in his interactions (asked her for "pics," invited her to lunch, offered to help her move) wit▮ ▮ (who also identifies as a Persian woman and was recruited and hired b▮ ▮

Initials:
Date: __/__/____



**COCKEY BRENNAN & MALONEY** P.C.

313 Lemmon Hill Lane
Salisbury, MD 21801

O) 410.546.1750
F) 410.546.1811

CBMlawfirm.com

EX9

ROBIN RINGGOLD COCKEY, ESQ.
█████████@█████.com
D/ 410.546.1698

January 24, 2025

***Via Email*** ████████@umes.edu

Alexandra Martin
Office of Institutional Equity and Compliance
Early Childhood Research Center, Suite 1129,
Princess Anne, MD 21853

**Re:** ████████████████

Dear Ms. Martin,

I write as ████████ counsel to provide purely legal analysis of ████████ complaint. I understand my client is incorporating this correspondence by reference in his own response, which will address the complaint's factual allegations.

Preliminarily, I note that nowhere does ████████ assert she informed ████████ his communications were "unwelcome". In applying the University's sexual harassment policy, a threshold determination is whether the conduct was "unwelcome". That determination is made objectively – not subjectively- by establishing that the complainant protested, and her protest was ignored. As explained in the leading (and quite opposite) case of *Albero v. City of Salisbury*, 422 F. Supp. 2d 549, 557 (D. Md. 2006), "conduct is 'unwelcome' when it continues after the employee sufficiently communicate that it is unwelcome."

In *Albero*, as in this matter, "[Complainant] does not allege that [the perpetrator] or anyone else at work propositioned her, touched her inappropriately, or made sexual comments in an effort to humiliate her" (*id.* at 422 F. Supp. 558). Moreover, in *Albero*, as in this matter, "there is no evidence that [complainant contemporaneously] complained about any of the alleged incidents…" [*id.*] Thus, even if one adopts complainant's allegations, wholesale, they cannot constitute sexual harassment as a matter of law because complainant never objected, protested or complained about the conduct attributed to ████████. Had she done so, and had ████████, persisted, then and only then, would it have become necessary to determine if the conduct was either "severe" or "pervasive".

Applying that analysis nonetheless to ████████'s allegations, I note they do not explicitly characterize his conduct as "sexual" or "based on sex". While ████████ disputes the accuracy of ████████ allegations, even if one assumes *arguendo*, they are true, they fall short of attributing to him a sexual *animus*. While some might find the comments ascribed


to ███████ appropriate and others not, the comments are not overtly "sexual" and certainly fall far short of the "severe-or-pervasive" standard.

As you are aware, ███████ denies any impropriety in connection with ███████ and regards her complaint as pretextual and the University's handling of it as retaliatory. Regardless of these considerations, however, ███████ complaint does not impute actual "sexual harassment" to ███████ as a matter of law, and the complaint should be dismissed as untenable.

Very Truly Yours,

Robin R. Cockey

RRC/mw

Cc: ███████  via email

January 24, 2025

*Via Email* ███████@umes.edu

Alexandra Ginta Martin
Office of Institutional Equity and Compliance
Early Childhood Research Center, Suite 1129,
Princess Anne, MD 21853

**Re:** ███████████████ **and Jason Casares**

Ms. Ginta Martin:

This is in response to the fictitious allegations leveled by ███████████ under the direction of Jason Casares. Please treat the attached letter from my attorney Robin Cockey as an addition to this letter.

As I informed you during the meeting on the 21st, my participation in this process is solely under protest to record my objections and does not constitute consent or any admission of jurisdiction by your office over these allegations, much less any acceptance of the lawfulness of your "investigation." OIE staff including you are engaging in a pretextual witch hunt against me despite conclusive exculpatory evidence. This biased "investigation" is in retaliation for a criminal complaint filed against UMES President Heidi Anderson last year.

On 6th December 2024, during the meeting where I was placed on administrative leave, you and Jason Casares were informed that this complaint was fabricated because I had caught ███████████████ submitting fraudulent timesheets to unlawfully take federal funds for hours that she did not work. I had also provided ███████ with critical feedback for impaired cognitive performance on the few occasions she showed up for work and for not producing work products of acceptable quality within deadlines. These documented facts about her unsatisfactory work performance and fraud provided the unlawful motivation for ███████████████ fabricated allegations.

I reiterate that I have never met ███████████████ in person without other employees being present. I have never even shaken her hand. I have never been within 6 feet of her. I have had no physical contact of any kind with her.

I categorically reject the allegations as fabricated, concocted, manipulated, and manufactured with malicious motivations. The word salad that you have deliberately and maliciously sequenced as a monologue with no context, dates, or actual production of the cell phone to create a flimsy innuendo does not constitute sexual harassment, intimidation, or any kind of harassment. Not a single word in your word salad has any connection with anything sexual. Merely putting random strings of phrases within quotes and selectively ordering them to create a weak and flimsy insinuation does not make

them true. Instead, the flimsiness of the innuendo – even assuming *arguendo* the whole fabrication at face value – highlights how it does not satisfy even the weakest definition of harassment, much less sexual harassment. Despite your perverse imagination, even assuming the word salad is taken verbatim, only an insane person would assume that things such as a meeting in Washington DC would be harassment or intimidation. Moreover, as you yourself admit, the word salad presented was "temporally" long before ▇▇▇ was an UMES employee. She was not even an applicant for employment. Communications between a stranger to the university and me on matters completely unrelated to the university are beyond the jurisdiction of your office.

Equally, the absolutely false claim that there was a "similar approach" with another person who is not a complainant is nonsense. It is fabricated to pad a flimsy false accusation. Even with such fluffy padding, it amounts to nothing of substance and there is nothing even remotely sexual, harassing, or intimidating. I have never met ▇▇▇ ▇▇▇ without other employees being present, have never shaken her hand, and never been within 6 feet of her. I wasn't even in Maryland when she supposedly moved somewhere.

To conclude, as you well know, this maliciously fabricated complaint is a pretextual witch hunt that will not stand up to scrutiny before any rational person much less in any court of law. It does not satisfy the definitions of sexual harassment, harassment, or intimidation. Moreover, no man would sexually harass these individuals and your insinuations are farcical and absurd. It must be quashed with an apology.

I also note that there has been no investigation into my complaint against Jason Casares despite the passage of over 6 weeks since the complaint was filed, and over three days since you were asked about its status.

Sincerely,

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

UMES



Outlook

## Re: Follow-up Meeting - Please Respond

**From:** [redacted]
**Date:** Mon 27/01/2025 13:03
**To:** Ginta Martin, Alexandra F <[redacted]@umes.edu>
**Cc:** [redacted]; Rivera, Cecilia M <[redacted]@umes.edu>

Hello Ms Martin,

I have still not received an update about the status of my complaint against Casares.

As noted in my response, we have plenty of evidence about the OIE staff's bias and the farcical nature of this unlawful investigation to achieve a predetermined outcome. That will all be brought forward to the appropriate agencies at the appropriate time.

Given this, we can do any further follow-ups in writing.

Please send me anything that is necessary for me to respond to in writing. You mentioned this was possible during our last meeting.

Sincerely,

[redacted]

---

**From:** Ginta Martin, Alexandra F [redacted]@umes.edu>
**Sent:** 27 January 2025 12:34
**To:** [redacted]
**Cc:** Robin Cockey [redacted]>; Rivera, Cecilia M [redacted]@umes.edu>
**Subject:** Follow-up Meeting - Please Respond

Hello [redacted],

As discussed during our previous meeting, we would like to schedule a follow-up meeting after a review of your response to the allegations.

Kindly provide your availability during the week of February 3 through February 7, 2025, so that we may locate a mutually convenient time.

Kind regards,



Outlook

## Re: Follow-up Meeting - Please Respond

**From** Ginta Martin, Alexandra <@umes.edu>
**Date** Tue 28/01/2025 16:03
**To**
**Cc** Robin Cocke; Rivera, Cecilia M <@umes.edu>

Hello

Thank you for the note. During our last meeting, we discussed your options to respond to the Notice of Allegations (provided in-person and via email), which included a written response. You indicated that a written response was the option you were inclined to consider. At that point, I explained that once we review your written submission, we would follow up with an invite to reconnect in person to clarify and/or ask questions related to the information included in your response. To further clarify, the option to submit a written response referred to the Notice of Allegations only, not the follow-up meeting.

Therefore, we do need to meet and reconnect in-person during the week of February 3 through February 7, 2025. Kindly advise of your availability, along with your Advisor's, so that we may locate a mutually convenient option.

Kind regards,

*Alexandra Martin*
*Assistant Director for Civil Rights, Complaint Resolution*
*& Deputy Title IX Coordinator*
(She/Her)

Office of Institutional Equity and Compliance
University of Maryland Eastern Shore (UMES)
Early Childhood Research Center, Suite 1129
Phone: 410-651-7999
Email @umes.edu
Website: www.umes.edu/OIE
Follow Us on Twitter: @UMESequity
Follow Us on Instagram: @UMESequity

**CONFIDENTIALITY NOTICE:** This e-mail and any attachments contain private, privileged, and confidential information belonging to the sender. The information therein is solely for the use of the addressee. If the receipt of this transmission has occurred as the result of an error, please immediately notify us so we can arrange for the return of the documents. You are advised that you may not disclose, copy, distribute or take any other action on the information transmitted.

:o: Outlook

## Re: Criminal activities at UMES

From ▉
Date Tue 28/01/2025 13:26
To ▉@oag.state.md.us ▉@oag.state.md.us>

Dear Ms. Bainbridge,

Good afternoon.

I was researching the standards governing professional misconduct for attorneys working for government agencies and thought of writing to you as a courtesy and to understand your actions.

I have sent you several emails detailing criminal activities by a gang under the leadership of the University of Maryland Eastern Shore President Heidi Anderson. These include the Ipad scam (taking federal funds deceitfully), reporting false enrolment data to obtain Title III, Title IV, and other federal and state funds for unlawful purposes, corruption, operating an organized racket for criminal schemes, conspiracy, honest services fraud, and wire fraud.

As I informed you previously, I sent whistleblower letters to the AG's office and others in June and September 2024. Upon learning about this, Anderson and gang started to retaliate against me in December and placed me on administrative leave based on an absolutely fabricated and false complaint by a temporary worker (an Iranian national).

You were given evidence that the action against me was a pretextual witch hunt and not maintainable as a matter of law because it did not satisfy the definition of intimidation, or harassment.

You were also informed about unlawful targeting of students and faculty by Anderson and gang in an attempt to coerce them to pad her false allegations, and continued retaliation against many by members of this criminal conspiracy. Specifically, you were informed that in addition to their above crimes, they were engaging in a conspiracy to violate civil rights.

Although you do not work in the US DoJ and their procedures (https://www.justice.gov/opr/professional-misconduct) do not apply to you, I am writing to kindly inquire as to what steps you have taken to stop the continuing illegal activities by Heidi Anderson, Jason Casares, and gang at UMES.

I am sure you are conscious of your obligations as an attorney working for the citizens of Maryland and just want to understand the steps taken in furtherance of those obligations. I would especially like to know why you continued to ignore my emails despite the clear evidence of retaliation and why you did not apparently take any steps to stop illegal activity at UMES.

Please let me know at your earliest convenience.



:o: Outlook

---

**Follow-up to Meeting Request - Please Respond**

---

From  Ginta Martin, Alexandra F███████@umes.edu>
Date  Fri 21/02/2025 09:00
To    ████████████████████████████████
Cc    Robin Cockey ████@cbmlawfirm.com>; Rivera, Cecilia M ████@umes.edu>

Hell███

I am following up on the email below regarding our requested in-person meeting with you.

It is our understanding that you have been communicating with other entities regarding your multiple complaints; therefore, we encourage you to refer any questions or inquiries related to those complaints to the entities in question. We will continue to focus on our investigation only.

As a result, we are moving forward with our investigation process into the complaint in which you have been named a Respondent. The following six (6) meeting dates with wide ranges in time are being proposed:

- **Option 1**: Tuesday, February 25, 2025, anytime between 1pm and 4pm
- **Option 2**: Thursday, February 27, 2025, anytime between 8am and 4pm
- **Option 3**: Friday, February 28, 2025, anytime between 8am and 4pm
- **Option 4**: Monday, March 3, 2025, anytime between 8am and 4pm
- **Option 5**: Tuesday, March 4, 2025, anytime between 8am and 4pm
- **Option 6**: Wednesday, March 5, 2025, anytime between 8am and 4pm

Please provide a date/time for the meeting (*from the options above*). The meeting will be held in-person in the conference room of the Office of Institutional Equity and Compliance in the Early Childhood Research Center, Suite 1129. Please understand that failure to respond to this email correspondence by Monday, February 24, 2025, close of business (5pm) with a date/time, and meet with our office by March 7, 2025, close of business (5 pm) will result in you being placed in unpaid administrative leave, pending the completion of the investigation.

In addition, and prior to your arrival, please provide the passcode (*that you generated*) for your University-issued/owned cell phone. Please include it in your reply to this email correspondence.

Kind regards,

*Alexandra Martin*
*Assistant Director for Civil Rights, Complaint Resolution*
*& Deputy Title IX Coordinator*
*(She/Her)*